Good morning. May it please the court, my name is Nancy Schwartz and I represent the appellant in this case, Mrs. Meredith McConnell, and I will reserve three minutes for rebuttal. I will watch my own time. Okay. This case involves the wrongful conviction of a volunteer board member of the Montana Native Women's Coalition based upon the government's mistaken understanding of what the elements of fraud are, in addition to the government investigator's mistaken understanding of what the restrictions are under the grant guidelines, based on a grant that was awarded by the Office of Violence Against Women. I wanted to first begin by highlighting the dates as charged in the superseding indictment, specifically as it relates to count four, because I believe that in the government's answering brief, the conduct alleged does not fit within the dates of the superseding indictment. Specifically, I'm referring to the government's statement that the Vegas trip was discovered, McConnell directed others to fabricate facts to cover up the impropriety of the trip. And counts one and two were dated August 17th through March 2018, but then count four was specifically limited to November 2017. And so when they're talking about the letter that was written and sent to the OVW, that actually happened in May of 2018. Did you make this argument to the district court? I'm hearing this for the first time. I did. I don't know that I made, I wasn't the trial attorney. No, no, I understand. Let me put it, was the argument made? I didn't mean to make it so particular. I don't know that I specifically made this argument. It was more because of after reviewing the government's answering brief again, I realized that the dates weren't really very specific. It's not covered in, in, in the opening brief or the reply brief. So why, why hasn't the argument been waived? Well, I don't think the argument has been waived because, um, and, uh, which is another argument that came up later, what had to do with Yates, um, as far as if there's an illegal theory that's raised before the jury, then the art, any error can't be harmless. And so this is an challenge to the indictment had to do with whether or not, um, the use of the word material as it addressed the scheme to defraud was adequate to allege a federal crime. That's the only technical challenge that I saw as to the form of the indictment. Did I miss something? No. Um, I was just talking about when you read through the, the brief, um, it's becomes unclear as to what they're specifically, when they bring in the additional information about a false statement, they're talking about something that happened in May, not in. I mean, the argument that you opened with would have made, I think a pretty good argument on a rule 29 motion at the close of the government's evidence, but I didn't see that motion raised by trial counsel. So you might want to move on to another issue because I don't think this one's going to get too, too much purchase. Okay. The arguments that I did brief had to do with the materiality and the failure to rate, to allege materiality within a count to, uh, the good faith instruction that I alleged was plain error. Um, and then the admission of the Tony Plummer evidence, which I believe was a violation of 404 B. Those are all clearly presented and well-briefed. Okay. I think that the strongest argument has to do with the materiality because it's clearly not alleged in the superseding indictment and, and it was required to be alleged. Um, there's a difference between them. What do you say? Not alleged. I mean, the word or a variant of the word material and materiality is there. And I confess I struggled to figure out what the practical difference was and I sort of came up empty. So could you tell me what the practical difference is? The practical difference in this case, um, and relying on a Supreme court case that was just recently argued, it's talking about materiality and how that gets conflated with the intent. And I think all of those are related in this case. It goes back to the good faith instruction. All of this is really related as far as whether or not what wasn't material, the material misrepresentations they didn't, there wasn't a materiality of the falsehoods wasn't alleged. There wasn't falsehood added in was where I thought that the, she's saying I, I didn't do it or this was all proper and it wasn't proper. I mean, I'm, I'm just kind of losing, how does this connect at all to the facts of the case? What wasn't alleged that you will claim should have been alleged and what wasn't material about the reported misconduct? Because it has to be something that's alleged to influence what the decision-maker made. Well, money was paid out. It was paid out on her say-so. Government alleged it shouldn't have been paid out. What am I missing? Well, the money was paid out largely based on travel advances, not actual claims after the fact. And so this was the policy that this, this organization had was to receive these travel advances in advance. Um, and so they weren't based on claims. This really gets me more to the, the plumber argument. I mean, I've served as a board member and as board chair of nonprofit organizations and a lot of things happen and I confess there are a few things I never really understood, but this is how it's always done. Okay. So this group always pays out travel advances. Okay. And then the previous executive director is charged and that should really focus attention. And yet you just told me that, well, this is how they always did it. And your client continued to do it that way, disregarding the fact that it had just been clearly demonstrated that maybe the same old way of doing things wasn't right. I'm lost as to why the, the plumber conviction and the training that followed isn't appropriate and relevant to your client's state of mind and as to how all of that could not qualify as material. Well, I think there was a huge difference between the plumber case and the volunteer board. Well, I'm not saying the facts are the same and indeed that serves the point. Focus the attention is the part that hits me. I'm serving as a board member. I'm serving as at the time of her misconduct, but anyway, it was immediately before she became chair. That should really catch your attention and say, I can't just do things the same old way. We need to pay attention to what we're doing and to do things the same old way suggests a pretty serious, not just lapse, but conscious closing of the eyes and taking advantage of a situation that's not supposed to be taken advantage of. Now, why isn't that relevant evidence? Well, I didn't say it wasn't relevant. I said that it was under 404B. It would be more prejudicial than probative. Okay. So I think it's real probative. So how could it be more prejudicial than probative? Because the, she was a paid employee and it also ignores the fact that this organization. Plumber was a paid employee. Your client was not, but she was become chairman of the board. Why doesn't that focus her attention on what's going on and what was being done? And to be told we're doing things this way because we always paid travel advances. We've always done it this way, but the system where your executive director has now been convicted. Why do you take, well, this is always how we do it as a legitimate explanation of what's going on. There wasn't anything illegal about receiving travel advances. But not paying it back if you didn't actually expend the money. Is that, is it hard to realize that's not proper? But that wasn't something that was charged in the indictment. They didn't do this on a coverup or failure and they didn't have a formal policy in place that required that to happen. They had an informal policy in place where they would take those advances off of the next travel advance or they have a payment plan arranged through that certified public accountant. This is how we've always done things. And so I just assume it's right. The plumber's information, what she did was completely different. I don't know that it was a travel advance that she failed to pay back. She was padding her paychecks. She was making, you know, she was completely different facts. Ms. Swartz, what's your response to the evidence against Ms. McConnell on the Las Vegas trip that she actually drove, or excuse me, she flew, but put in as if she had driven because the reimbursement was higher? Right. And what I had put in my brief, when you look at the specific CFRs that are in place here, there's no requirement to, you can either get actual costs or mileage. You don't have to. But you have to actually do it. I mean, that's the problem. She, you know, she claimed that she did one when in fact she did the other. And the claim that she made resulted in a higher payout than what she would have received had she truthfully reported how she got to and from Las Vegas. But I don't think the CFRs require you to pay back the difference. That's not my experience with any federal claim. You are allowed to. So you don't think that's a material misrepresentation to say I flew or I drove when in fact I flew? Where the result is the government pays more? Why would that not be material to a scheme to defraud the government or program fund? Because it still has to be false. It has to imply the fact. But it is false. It can't be true. It has to imply that there's a problem with doing that. They are allowed to keep either actual costs or the mileage. There's not a, the tribe would let them do that. And there's no real policy. I'd be very surprised if the regulation, I mean, we have to follow those same regulations when we travel. Right. I mean, I can't go to Pasadena and say I drove when in fact I flew so that I get more money in my pocket. Wouldn't that be fraud on the government if I did that? There's no requirement under the CFRs. You're not asking us to revisit the jury's verdict, are you? I didn't see a rule 29 sufficiency of the evidence claim. You were making difference arguments. And one question I had was, you argued that the indictment had to allege and the government had to prove that each statement was material and fraudulent. But we have a case, Omer, which relies on Woods, which says it's not required to identify any material false statement so long as the materiality of the scheme or artifice is alleged. And why wasn't that appropriately alleged in the indictment? What I understand, Omer, to say is that the materiality of the specific false statement is not required, but that's a different issue than whether or not you have to allege the materiality of either the scheme or the false or fraudulent statements that are made. The indictment said material scheme to defraud. And so I go back to Judge Clifton's question, why is that different or in what way is that different than what you said the indictment should say, which is materiality of the scheme to defraud? Right, the materiality of the scheme to defraud or materiality of the false or fraudulent statements. They have to be something that's the Office of Violence Against Women. Right, but the indictment alleged that it was, and the jury so found. And you're not asking us to revisit the jury's verdict as I read your brief. What I'm saying is that the jury was allowed to reach a conviction based on a false legal theory. And so I'm not asking about... And what was the false legal theory? That they did not have to which is what Omer says. But I thought our case law says that the government is not required to identify the specific false statement. I mean I'm looking at count four, it charges her with defrauding the government in the amount of $1,826 regarding the Las Vegas trip. And going back to my earlier questions about driving versus flying, why wouldn't that be material to the scheme to defraud the program funds by falsely representing that I drove when in fact she flew? The conduct in that in count four was November 2017. And when she submitted that, that was her intent was to drive. And so there was nothing false. Why couldn't the jury find just the opposite based on all of her other conduct that she never had when she submitted it that was part and parcel of the scheme to defraud? Because she never intended to drive. Again, I mean I'm circling back around to, and I'm running out of time here, but I'm circling back around to that CFR that I cited in my brief. It's really clear that you don't have to refund the difference. So there was, they keep saying that they violated these regulations, but then they never showed where the regulations were actually violated. They misreading the regulations. I'm not sure you need to show a violation of the regulation if it is material that you flew rather than drove and you got more money by claiming that you drove. Thank you. I'll give you a couple minutes. Thank you. All right. Thank you. Good morning, your honors. Ryan Weldon appearing on behalf of the United States. The Montana Native Women's Coalition was a program that was designed to help domestic violence victim on the reservations in Montana. I was actually trial counsel for both the plumber prosecution as well as the McConnell prosecution. So there's a long history that was involved in this case. I'll start with the materiality aspect, unless the court has any questions or wants me to start somewhere else. But in the analysis, this is notice pleading in the indictment. So we allege specifically that there is a material scheme and artifice to defraud. Was there a defense request for a bill of particulars? There was not a request for a bill of particulars, your honor. There were challenges to the indictment. There was the motion to dismiss that was filed, but there was not a motion for a bill of particulars. And to that point, your honor, in this case, the and I know we keep talking about these terms material, but the real question, it's sort of a nebulous term and it's intentionally left broad. And that's because people who commit fraud are they're tricksters. They are able to engage in material falsehoods. So that term really means that they're trying to get money from other people. And in this instance, when you look at the indictment at the notice pleading stage, not only does it allege that it's a material scheme and artifice to defraud, but then you actually go down into the next paragraph and it identifies some of the items that are the material scheme and artifice to defraud, like double billing, travel fraud, all of those other items that are designed to get the money from the Department of Justice. And the double billing was they were claiming per diem for room and board, but they were also submitting actual receipts for expenditures on food. That's exactly right. So a few examples down in Las Vegas was one of them. They go to the Wicked Spoon and at the Wicked Spoon, they're also receiving per diem. So they have their paid for, but then they get per diem paid on top of that. Same thing in Billings. They have a working dinner where they use the company credit card or the coalition credit card to pay for that. It's paid with federal funds. And then at the same time, they're getting per diem as a result of that. So that was the outline that we had in the indictment. And again, the reason I bring that up is because we can get into sort of the particulars at trial about materiality. But the challenge, as I understand it in the briefing, is notice pleading. Short, plain, concise, and we've identified the specific term. And then we've actually identified the parts that are involved in that particular fraud. I know that the cases have already been referenced of Omer. That's that was not lost on me. This is not the first time you've suffered fraud in the District of Montana. This is not the first time, Your Honor. And so this was a Chris McClain case. He was had prosecuted the case. And in that instance, we actually did not use the term material. We have since learned from that it is in the indictment and it takes care of that. And then I know Judge Clifton, when I was reviewing the case file prior to the argument today, you actually wrote the decision used to me. Yeah. And so the one thing that I wanted to point out is I think there's a twist of language here. And I just wanted to identify it for the court. And that is neither. The Supreme Court decision says material falsehoods. That is the term that is used. And then you see in the briefing from the appellant side, there is a use of the word material false statements. And the two are not the same. And your decisions make that very clear. The one, for example, is the Woods decision that says Nieder's requirement of a material falsehood did not alter our pre-existing case law to require a specific false statement. So that's what I think the court's analysis is, that this is just a challenge to the indictment. I'm happy. Can you help me? Because I don't have the CFR provision in front of me. Can you address that? Yes, absolutely, Your Honor. With the CFR, I'm with the court on this one. This would be news to every federal government employee that they could fly to New York City from Seattle and claim mileage rather than the actual cost of the flight. When you read that, you can't lie about the method of travel. And that method of travel was, I'm going to fly down to or I'm going to drive down to Las Vegas. And then instead, you actually fly. The other thing that I think it actually makes it an easier question for the court. I mean, you can look at the CFR. I think it's clear on its face that you can't lie to obtain additional funds. But more importantly, even bringing it to the So she actually received per diem when she was sleeping in her own bed at home. She also claimed travel days because it would not just take one day to drive down to Las Vegas from Montana. It would take multiple days. So she did not even claim. She claimed that it was two days, four days total for travel to get down to Las Vegas, which would clearly be inaccurate. I assumed she didn't have any hotel receipts to to prove that she stopped along the way. She did not. And if you look at the supplemental expert excerpt of records, there's actually the follow up voucher after the fact. The only thing that was included was a taxi receipt that was associated with her leaving early. Oh, OK. Yes. I did want to address the Tony Plummer prosecution unless the court had any other questions on materiality. I'm not sure it pertains to materiality. I remember reading some years ago that one of the big national law firms based in New York, I don't remember which one, and these had partner meetings and they had trouble getting partners come to meetings. And I recall as chair of nonprofit boards, sometimes you struggle to get a quorum. What this New York law firm wound up doing is they'd have a partner meeting. And as each partner came in, they're handed a 20 dollar bill. Now, these are people making seven figures. But the 20 dollar bill was an inducement. And so when I read the part about, you know, we're going to give them a little swag or Indian craft item or something, they come to the meeting. I start to wonder, well, you know, there may actually be a real purpose to that. Is that a material scheme to defraud somehow? I think that it still would be, Your Honor. And that actually is a perfect transition into the Tony Plummer prosecution, because let's imagine for a moment that in that same instance that where we have sort of the inducement of these law firms to come to New York City, but one of them is prosecuted for using those funds in that way. If it was ever unclear whether you could do that or not, now everybody knows and everybody is on notice that that sort of conduct cannot be done. And that's why the Tony Plummer prosecution was important, not only to establish materiality at trial, but just that defendant had the specific intent to defraud at that point in time. So with the Plummer prosecution, I did want to walk the court through the analysis that the district court went. This is an abuse of discretion standard. So we are not, you know, revisiting this issue de novo. This is argued as as a due process violation as well, which would trigger harsher standards. That is true. That is absolutely true, Your Honor. And I provided a site which was that Martinez-Rosas v. Gonzalez case in the briefing. And essentially you can't take an evidentiary issue and create a due process issue when the rules of evidence could already address that. And so the quote from that, Your Honor, was traditional abuse of discretion challenges recast as alleged due process violations do not constitute colorable constitutional claims that would invoke the court's jurisdiction. And so, in other words, we don't want to incentivize constitutional issues when the federal rules of evidence could already address that issue. You would agree, though, that we have to ascertain that the district court correctly cited two federal rules of evidence, 404B, 403, and maybe 401. Correct. And actually conducted the balancing. That's exactly right. And once we satisfy ourselves that Judge Waters did that, then it's subject to an abuse of discretion standard. That's exactly right, Your Honor. And so the analysis, just so the court's aware of our specific position on this, is it relevant? It is highly relevant for the reasons that we just spoke about from the government's position. And particularly the context matters. The defense in briefing concedes that the training is admissible, but the real reason is why did that training take place and why was everybody on high alert that these activities could not occur? And so that context was important. The next step then is, is it more to the 403 analysis? And that actually is the great deference that the site that we provided for Lloyd. And in that, the court said that the mistake or accident sort of a defense made this highly probative. And that's ER 101 to 102. And of course, as the court saw in some of the briefing, the defense actually put up a chart that showed negligence and then all the way up to criminal fraud. So that's why it was important to put the context and the environment before the jury so they understood why this scheme to defraud and why there was a specific intent to defraud at that point in time. The other thing that I thought was important, and I want the court to know about this, it wasn't as if this was the government had the complete rollover and we got to do whatever we wanted in terms of the evidence. And I'll give a perfect example. The district court, there was a statement in the training where the trainer told the members of the board, you dodged a bullet as it relates to the plumber prosecution. And that was clearly excluded because we didn't want to merge any sort of criminal activity. You dodged a bullet meaning you were lucky that we didn't come after individual board members in addition to your executive director. That's exactly right. And the district court's concern, I think at that point, was let's make sure that we don't link McConnell with the but the district court just never gave it. We did in the briefing, your honor. We identified an instruction and then we never proposed, never ultimately made it into the instructions. It was never proposed. There was a 404B. The defense never offered one nor did they object to the instructions when the instructions were settled. They did not. And in fact, on top of that, and that's why we've identified in our brief that if we're reviewing the instruction, that would be reviewed under plain error. And in this instance, the defense actually withdrew the 404B instruction because they didn't want to create any sort of a confusion. And that was their call. But the 404B instruction, the stock one that I'm thinking of, basically admonishes the jury to consider it for its probative value, but warns them that it may not be considered as, in essence, substantive evidence against the defendants. That's exactly right. And the defense withdrew that instruction because... This is not, this is a little different from the typical 404B situation because it's not prior misconduct by this defendant. That's exactly right. And that's why, to make our position clear on this, we do not think that 404B applies to this analysis. We think it's purely... The argument that was made that this was guilt by association, was there brought out a trial information about the association between Plummer and McConnell, the defendant? What sort of information was brought out that would support the argument of guilt by association? Well, they're actually, they were in the same Montana Native Women's Coalition. They did know each other. So that clearly was there. I will tell the court, though, in terms of keeping them separate, these frauds were two years apart. So it's not even as if they were within the same realm. And then, of course, in closing, I actually made sure that I told the jury that these are completely different frauds. And you can see that that quote is cited in the paperwork for the court. Was McConnell on the board at the time that the underlying events in the Plummer prosecution took place? No. She was... Well, she was present. And I should say this. She was on the board. She was present. She was not the board chairperson. She didn't become the board chairperson until a couple months after the Plummer conviction, if I recall. That's exactly right, Your Honor. But she was on the board before. She was. Not charged. That's correct. And just so the court knows, and this was never in evidence at all, but there was never any other board member that was prosecuted associated with the Tony Plummer prosecution. The other thing I did want to make sure I was clear for the court on is there was a reference to the co-conspirator instructions that there needs to be a co-conspirator instruction that needs to be given. Ms. McConnell and Ms. Plummer were in no way co-conspirators whatsoever. There were co-conspirator instructions given as it relates to Barbara Daychief and Cheryl Lawrence, both of whom testified, but there were not instructions. There wasn't one because Ms. Plummer was not a co-conspirator. And I see that my time has run out. Thank you very much. Thank you. Judge Tallman, that CFR is actually cited in my brief at page 57, and it talks about costs may be charged on an actual cost basis or per diem or mileage basis in lieu of actual costs incurred or a combination of the two. Yeah, but it's actual costs incurred. That's what I'm focusing on. And I don't see how a claimant can legitimately claim that the actual costs incurred were from driving when they flew. But none of that happened until after the dates of the indictment. Well, that gets back to the point we were talking about just before you sat down, that the jury could find at the time she submitted the claim that she had no intention of driving, she was going to fly. Moving to the 404B argument, I do agree that you can get there if the court properly applied the evidence rule, but she didn't. She said that 404B does not apply to someone other than the defendant. But you don't disagree that she actually did engage in a balancing of probative value versus prejudicial impact as 403 requires? Yes, she did engage in the balancing, but she said that the issue about the indictment was a closer issue, and so at that point I'm saying that that's a... But 403 isn't limited to 404B evidence. 403 applies to the impact. So how did the district court err when we analyzed the balancing under an abusive discretion standard? Because the Plummer, again, the Plummer case was so completely different. There was no evidence that Mrs. McConnell actually knew all of the information that was involved in that. Where they were really getting into trouble... But does it matter if the purpose of the training is to train the new board members and the new board chair in order to avoid these problems in the future? Why wouldn't it be appropriate to say, look, here's what happened in regard to the Plummer situation. Don't do this. Where they were really getting into trouble with the OVW as far as Plummer was because they kept paying her while she was under indictment, and that's where they were having problems and having to pay that back through in-kind contributions or whatever. It wasn't because they were aware of the things that she had done. So that's where they were getting into trouble with the OVW. If you can make one final statement. Okay. As far as Judge Akuta's comment about whether other references to Plummer and the beginning of the case, they talked about this fraud and they included the Plummer indictment in with that. So they definitely put those two together. And then in the closing arguments when they're talking about the den of thieves, I think that those both included the Plummer in with Mrs. McConnell. Thank you. Thank you. Case just argued is submitted. Thank you, counsel, both for your arguments.
judges: TALLMAN, CLIFTON, IKUTA